**EPIC METALS CORPORATION,**
**a Pennsylvania corporation,**
**Plaintiff,**

v.

**CONDEC, INC., a Florida corporation,**
**and Frank Souliere, Sr., an**
**individual, Defendants.**

**No. 92–744–CIV–T–17C.**

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 1, 1994.

Frank R. Jakes, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, for Epic Metals Corp., a Pennsylvania Corporation plaintiff.

Robert E. Brazel, Smith & Fuller, P.A., Tampa, FL, Sidney W. Kilgore, Coton, Kilgore & Lavigne, P.A., Clearwater, FL, for Frank Souliere, Sr., defendant and Condec, Inc.

### ORDER

JENKINS, United States Magistrate Judge.

THIS CAUSE comes on for consideration of Plaintiff's Motion for Partial Summary Judgment (Dkt. 39), Defendants' Response (Dkt. 42), and Plaintiff's Memorandum of Law in Opposition to Defendants' Cross–Motion for Partial Summary Judgment (Dkt. 44).[1]  Oral argument has been held.

### I

In 1969 plaintiff began manufacturing and selling its EPICORE composite floor system for use in multiple-unit residential construction.  In 1980 it authored a promotional bro-

---

1. The parties have consented to proceed before the Magistrate Judge pursuant to Title 28, United States Code, Section 636(c) and Fed.R.Civ.P. 73.

chure entitled "Epicore Concept 2 Composite Floor System for multiple-unit residential construction." The brochure and its contents were proper subject matter for copyright protection and on November 11, 1980 plaintiff's registration of copyright was granted.

In 1991 plaintiff created another promotional brochure entitled "Composite Floor System with Steel or Concrete Framing." Again plaintiff duly registered its copyright in its EPICORE brochure.

In 1980 plaintiff hired defendants to be the exclusive EPICORE distributor for Sarasota, Pinellas, Hillsborough and Manatee counties. Defendants had access to and used plaintiff's promotional literature and catalog. Defendants had the exclusive right to sell and market EPICORE products until 1987 when plaintiff cancelled defendants' distributorship. Plaintiff terminated the distributorship because defendants had begun manufacturing and selling a substantially similar, if not identical, composite floor system competitive to plaintiff's system. The cancellation terminated defendants' right to use plaintiff's copyrighted brochures and this fact was emphasized to the defendants. Defendants, former EPICORE distributors, are now engaged in direct competition with the plaintiff.

In 1991 defendants produced their own promotional brochure and later admitted that they copied the plaintiff's brochure in preparing their brochure. (Dkt. 37, Exh. G; Dkt. 40, pp. 132–37, 140). Plaintiff then instituted this lawsuit alleging trade dress infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I); copyright infringement of plaintiff's copyrighted EPICORE brochure in Count II; copyright infringement of plaintiff's copyrighted composite floor system brochure in Count III; reverse passing off in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count IV); and unfair competition under Florida common law (Count V). On April 29, 1994, defendants filed counterclaims alleging violation of Florida Statute § 540.08 (1993) (Counts I and III), and claims for common law invasion of privacy (Counts II and IV).

II

Plaintiff requests summary judgment on its copyright infringement claim, Count II, and on the defendants' counterclaims. The parties agree that there is no genuine issue as to any material fact regarding plaintiff's Count II. Plaintiff contends that the certificate of copyright registration constitutes *prima facie* evidence of the validity of the copyright, including the requirement of originality and entitlement to copyright protection. Plaintiff also argues that defendants have failed to rebut this presumption. Moreover, because defendants admitted copying plaintiff's work, plaintiff argues that summary judgment must be entered in its favor.

Defendants argue that summary judgment should be entered in their favor because the photographs, charts and tables are not original or protectible subject matter. Therefore, defendants state that the material they copied is not entitled to copyright protection. Defendants contend that the doctrine of merging ideas into expression also prevents plaintiff's brochure from copyright protection.

Summary judgment is appropriate when the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. It is undisputed that there is no genuine issue as to an material fact concerning Count II of plaintiff's amended complaint. (Dkt. 42, p. 2). Therefore, only a legal issue remains for this Court's determination.

■ To succeed on its copyright infringement claims, plaintiff must prove that (1) it owns a valid copyright in the work allegedly infringed, and (2) that defendants copied that work. *See Donald Frederick Evans and Assoc., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 903 (11th Cir.1986).

The validity of plaintiff's copyright in the EPICORE brochure is not specifically attacked by defendants. Plaintiff received a certificate of copyright registration in its brochure which constitutes *prima facie* evidence that the copyright is valid, original and entitled to copyright protection. *See* 17 U.S.C. § 410(c) ("in any judicial proceedings the

certificate of a registration made within five (5) years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate"); *see also Arthur Rutenberg Corp. v. Dawney,* 647 F.Supp. 1214, 1216 (M.D.Fla.1986). Defendants have failed to produce evidence creating a genuine issue of material fact to rebut the presumption of copyrightability.

■ It has also been established that defendants admit to copying portions of plaintiff's copyrighted EPICORE brochure. The president of CONDEC, INC., defendant Souliere, testified at his deposition that defendants copied the tables and charts from plaintiff's brochure. (Dkt. 40, pp. 133–137). However, a few of the numbers were changed. Defendant Souliere also admitted that defendants appropriated two photographs from plaintiff's brochure for use in their CONDEC brochure. (Dkt. 40, p. 140). After comparison of the two brochures, it is clear that defendants copied substantial portions of plaintiff's brochures and incorporated them as their own. (Dkt. 39, Exh. E).

The parties' brochures have similar designs on their covers, the photos with the accompanying textual captions on page 2 and 3 are identical, and the remainder of the brochures illustrate a substantial copying of the charts and tables. The fact that a few numbers in the charts and tables were altered and only two of twelve photographs were copied does not constitute a de minimis appropriation.[2] "A taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation." *Fisher v. Dees,* 794 F.2d 432, 435, n. 2 (9th Cir.1986). Overall, the defendants' brochure is substantially similar to the plaintiff's EPICORE brochure and an average person would recognize the appropriation.

■ Defendants argue that the photographs, charts and tables they copied from plaintiff's brochure are not the proper subjects of copyright protection. (Dkt. 42, p. 4). Defendants contend that the photographs

"simply depict various stages of construction which could easily be obtained from any number of job sites" and therefore do not retain any elements of copyright protection. It is well settled that photographs are copyrightable. *See* 17 U.S.C. §§ 101, 102(a)(5); *Rogers v. Koons,* 960 F.2d 301, 306 (2d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). However, copyright protection extends only to original aspects of the work such as posing of the subject matter, lighting, angle, selection of film and camera, evoking a desired expression, and almost any other variant involved. *Id.* at 307. "[T]he quantity of originality that need be shown is modest—only a dash of it will do." *Id., citing Feist Pub., Inc. v. Rural Telephone Serv. Co., Inc.,* 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). The cases cited by defendants stand for the same proposition. Defendants are permitted to copy the idea presented by plaintiff's photographs but can not simply make copies of the photographs. *Blackman v. Hustler Magazine, Inc.,* 620 F.Supp. 792, 796 (D.D.C.1985) (magazine which published a photographer's photographs infringed the photographer's copyrights), *aff'd in part, rev'd in part,* 800 F.2d 1160 (D.D.C.1986) (on issue of damages).

Defendants state, "the fact that the identical subject matter is present in two (2) photographs does not prove copying or infringement," relying on *Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.,* 575 F.2d 62 (3d Cir.), *cert. denied,* 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193 (1978). However, the *Franklin Mint* case involved two paintings with similar ideas but different expressions, unlike the instant situation where defendants copied plaintiff's photographs and then admitted to the copying.

Defendants argue that there are only a very few ways to express the idea contained in plaintiff's photographs. Therefore, they argue that the idea and expression have merged and become inseparable. "Under the merger doctrine, 'expression is not protected in those instances where there is only one or so few ways of expressing an idea that

2. Defendants noted at the hearing that the inside cover of the EPICORE brochure contains a license to freely copy page 18. However, this fact bears on damages and not liability.

protection of the expression would effectively accord protection to the idea itself.' " *Bell-South Adv. & Pub. Corp. v. Donnelley Info. Pub., Inc.*, 999 F.2d 1436, 1442 (11th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 943, 127 L.Ed.2d 323 (1994). However, plaintiff does not seek to monopolize the subject matter or idea of the photographs but to protect the actual reproduction of the expression of the idea, the photographs themselves. Making a copy of plaintiff's photographs constitutes copyright infringement. *See Blackman,* 620 F.Supp. at 796.

█ The charts and tables of information and specifications are also copyrightable. This data is original expressions of facts and processes derived from independent testing conducted by plaintiff and as such may be protected under the copyright laws. *See Applied Innovations, Inc. v. Regents of the Univ. of Minn.,* 876 F.2d 626, 635–36 (8th Cir.1989) (psychological testing data were copyrightable as expressions of facts or processes).

Defendants argue that because EPICORE and CONDEC products are "very similar, if not identical, it would hardly be surprising for test results performed on each product to likewise be very similar, if not identical." (Dkt. 42, p. 6). Defendants are permitted to use the underlying data and facts to conduct their own tests for use in their brochures. *See generally id.* at 636 (although discovered facts, statistical models and mathematical principles cannot be copyrighted, certain adjustments on basis of expertise and clinical experience resulting in testing data are original expressions of those facts or processes as applied and are copyrightable). However, defendants have not shown that they performed similar tests or that had they performed similar tests the results would have been identical.

Defendants again rely on the doctrine of merger. The relevant inquiry is whether plaintiff demonstrated originality in its arrangement or coordination of the facts. *See BellSouth,* 999 F.2d at 1443. The charts and tables at issue contain information about

U.L. Fire Ratings, sound transmission ratings, engineering tables regarding amounts or reinforcing steel required over supports, corresponding to slab depth and span length, and load tests. (Dkt. 37, Exh. A). The brochure states, and plaintiff claims, that the test results are a result of independent laboratory testing. This technical information is provided to assist experienced structural engineers. The EPICORE product is an original creation, "[t]here is no other Composite deck system similarly designed or able to match EPICORE's performance." (Dkt. 37, Exh. A, p. 2). Therefore, plaintiff tested its new product.

There is no merger of idea and expression because plaintiff's coordination of the facts are a result of independent testing. Plaintiff does not seek to prevent defendants from using statistical information or tests similar to plaintiff's, but to prevent defendants from copying the independent test results set out in plaintiff's brochure. *See Applied Innovations,* 876 F.2d at 635–36.

Plaintiff has established that it owns a valid copyright in the EPICORE brochure and that defendants copied that work. Moreover, defendants' argument that portions of plaintiff's copyrighted EPICORE brochure are not subject to copyright protection does not defeat plaintiff's claim on the facts presented. Accordingly, plaintiff's motion for partial summary judgment as to liability in Count II is granted. The issue of statutory damages resulting from defendants' copyright violation as alleged in Count II is reserved for trial.

### III

Plaintiff has also moved for summary judgment on defendants' counterclaims. Defendants' counterclaim alleges violations of Florida Statute § 540.08, and claims for common law invasion of privacy.[3] A photograph of defendant Souliere was taken by an EPIC officer in 1980 as defendant Souliere appeared to be looking at a set of plans on a job site with two other individuals. This color

---

**3.** The question of whether CONDEC has standing to bring these invasion of privacy counterclaims

has not been raised by the plaintiff.

photograph was subsequently used by plaintiff in its colored 1980 brochure and was later published in black and white in its 1991 brochure. (Dkt. 39, Exh. A). Defendant Souliere alleges that he did not expressly consent to plaintiff using the photograph in its promotional brochures.

Plaintiff contends that it is not liable because it did not associate Souliere's name or personality with its product or promote a product or service with the photograph. Plaintiff argues that no reasonable juror could conclude that the use of the photo in the brochures constituted commercial exploitation. Further, plaintiff argues that defendants' counterclaims are barred by laches and Florida's four year statute of limitations.

Defendants contend that the counterclaims involve questions of fact and are therefore inappropriate for summary judgment. Defendants argue that plaintiff's use of defendant Souliere's photograph amounts to commercial exploitation and that whether the photograph of defendant Souliere falls within the member of the public exception is a jury question. Defendants state that a 40 year statute of limitations is provided for in the statute and that even if this is not the applicable statute of limitations, the republication in 1991 constitutes a separate cause of action. *See* Fla.Stat. § 540.08(4).

Florida Statute § 540.08 provides in relevant part:

(1) No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use ...

(3) The provisions of this section shall not apply to:

(c) Any photograph of a person solely as a member of the public and where such person is not named or otherwise identified in or in connection with the use of such photograph.

(4) No action shall be brought under this section by reason of any publication, printing, display, or other public use of the name or likeness of a person occurring after the expiration of 40 years from and after the death of such person.

Fla.Stat. § 540.08 (1993).

■ The threshold inquiry is what statute of limitations applies and whether the counterclaims are barred by the applicable statute of limitations. There is a distinct difference between a statute of limitations and a statute of repose. "A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues.... A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered." *Bradway v. American Nat'l Red Cross,* 992 F.2d 298, 301 (11th Cir.1993) (citations omitted).

■ Statutes of repose terminate the right to bring an action after the lapse of a specific period. Statutes of limitations provide the time a party has to initiate an action once the injury has occurred. Section 540.08(4) is a statute of repose because it terminates the right to bring an action if the commercial use does not transpire within 40 years after the death of the individual. This is an absolute bar occurring before the cause of action accrues.

Because section 540.08 does not provide its own limitations period and the action does not fall within any of the specific categories provided in Florida Statute § 95.11, the four year all inclusive statute of limitations is applicable. *See* Fla.Stat. § 95.11(3)(p). Counts I and II are based on the 1980 publication of the EPICORE brochure. Defendants conceded at the hearing that Count II, the common law invasion of privacy claim on the 1980 brochure, is barred by the 4 year statute of limitations. Therefore, Counts I and II are barred by the four year statute of limitations.

■ Whether defendants' counterclaims in Counts III and IV are also barred by the four year statute of limitations turns on whether the 1980 publication and the later 1991 reproduction are one cause of action arising when the first brochure was published, or whether the 1991 publication of the

same photo, but in black and white, constitutes a separate cause of action. Defendants contend that the later brochure is a new publication and because a new copyright was obtained, constitutes a separate cause of action.

Plaintiff argues that simply continuing to use the photograph the same way does not constitute a new cause of action. Plaintiff also argues that the fact two copyrights were obtained is irrelevant for purposes of this determination.

■ There is no case law directly dealing with this issue. However, in *Blackman* the court treated three successive publications of a photograph involving distinct set-up and arrangements as three separate infringements for the purpose of assessing damages. *Blackman*, 620 F.Supp. at 796. Also, in defamation actions the modern rule is that subsequent publications of the same material, such as a new edition of a newspaper or book, are republications that "trigger a new cause of action and commence a new limitations period." *See Foretich v. Glamour*, 753 F.Supp. 955, 960 (D.D.C.1990). Thus, assuming that the 1991 publication of defendant Souliere's photograph in the plaintiff's second brochure is a separate cause of action, the four year statute of limitations does not bar defendants' Counts III and IV.

■ However, plaintiff's motion for summary judgment regarding defendants' Counts III and IV is granted on other grounds because no reasonable juror could find that plaintiff's use of defendant Souliere's photograph constitutes commercial exploitation.

The photograph at issue shows construction material and the caption reads, "[o]ne truck can transport 15,000 square feet of EPICORE deck. Unloading can be completed quickly and efficiently. Material can be easily stored until ready for installation." In the photograph, three individuals stand near deck material but they are not identified. Apparently, defendant Souliere is the man in the center standing behind a stack of lumber with only his head and shoulders visible. His head is down, and he is wearing a straw hat. The depiction of Souliere is less than a half

inch in width and length. Further, the black and white photograph is unclear and defendant Souliere's features are unrecognizable.

Florida Statute § 540.08 prevents the unauthorized use of a name or personality to directly promote the product or service of the publisher. The publication is harmful because of the way it associates the individual's name or personality with the product. *Valentine v. C.B.S. Inc.*, 698 F.2d 430, 433 (11th Cir.1983) (*per curiam*); *Loft v. Fuller*, 408 So.2d 619, 622–23 (Fla. 4th DCA 1981), *rev. denied*, 419 So.2d 1198 (Fla.1982). It is not enough that the publisher make money through sales of product, but that the name or photograph distinguishes the product to rise to the level of commercial exploitation prohibited by the statute. *Valentine*, 698 F.2d at 433 ("use of a name is not harmful simply because it is included in a publication sold for profit.").

The intended focus of the photograph was on the deck material, not defendant Souliere. The caption is the same for the 1980 and 1991 brochures and discusses the deck material in the photograph. Defendants have presented no evidence that plaintiff exploited defendant Souliere's photograph for the purpose of promoting EPIC products. Instead, defendant Souliere testified that no one had recognized him as being depicted in the subject photograph. (Dkt. 40, pp. 177–78). Further, defendants have not produced any evidence that any customer viewing the photograph believed that defendant Souliere was endorsing the EPICORE product.

The instant case is unlike the *Nottage* case relied on by defendants in that defendant Souliere's photograph was not prominently displayed as the focal point of large posters and postcard advertising distributed worldwide. *See Nottage v. American Express Co.*, 452 So.2d 1066, 1068 (Fla. 3d DCA 1984) (*per curiam*). Also, the *Nottage* case involved a motion to dismiss the complaint which is a different standard than a motion for summary judgment. In a motion to dismiss for failure to state a· cause of action, matters outside the pleading are not considered. Therefore, *Nottage* is distinguishable on its facts.

Moreover, this photograph falls within the statutory "member of the public" exception. *See* Fla.Stat. § 540.08(3)(c). The three men in the photograph are not named, are not in uniform, and are not otherwise connected with the use of the photograph. Defendant Souliere appearing in the photograph is merely fortuitous. Therefore, this Court finds that no reasonable juror could find that the photograph of defendant Souliere in plaintiff's brochure constituted commercial exploitation or that it does not fall within the member of the public exception provided by Florida Statute § 540.08(3)(c). Accordingly, plaintiff's motion for summary judgment is granted as to defendants' Count III.

■■■ Defendants claims for common law invasion of privacy, Counts II and IV, also concern whether plaintiff appropriated the photograph of defendant Souliere for commercial use. Under Florida common law, the tort of invasion of privacy is divided into the following four categories:

(1) intrusion into an individual's physical solitude or seclusion;

(2) public disclosure of private facts;

(3) portraying an individual in a false light in the public eye; and

(4) appropriation, i.e., commercial exploitation of the property value of one's name.

*Loft*, 408 So.2d at 622. Defendants' claims fall within the fourth category.

Appropriation of one's name or likeness has been compared to impairment of a property right which involves an aspect of unjust enrichment to the publisher. *Loft*, 408 So.2d at 622, *citing* RESTATEMENT (SECOND) OF TORTS § 652I (1977). Defendants have not shown commercial exploitation of defendant Souliere's name or personality that resulted in unjust enrichment to plaintiff. No one recognized defendant Souliere in the photograph and there is no evidence that he was associated with and was endorsing the EPICORE product.

**4.** Defendant was aware of the photograph appearing in the plaintiff's brochure in 1980 yet did not object or bring this fact to plaintiff's attention until his deposition in April 1994. (Dkt. 40, pp.

Defendant is required to prove that he has been publicly identified as a prerequisite to recovery on his invasion of privacy counterclaims. *See Rawls v. Conde Nast Pub., Inc.,* 446 F.2d 313, 318 (5th Cir.1971), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed.2d 730 (1972) (plaintiff may not recover for invasion of privacy when privacy remains inviolate). Defendant Souliere was not identified in the photograph and testified at his deposition that no one had recognized him as being depicted in the subject photograph. (Dkt. 40, pp. 177–78). Defendants have not presented evidence of commercial exploitation to support their common law invasion of privacy claims. No reasonable juror could conclude otherwise. As a result, summary judgment is entered for plaintiff on Count IV of defendants' counterclaims.[4]

Upon consideration it is ORDERED:

(1) that Plaintiff's Motion for Partial Summary Judgment (Dkt. 39) is GRANTED as to Count II or the Amended Complaint (liability only) and as to Counts I through IV of defendants' counterclaims;

(2) that Defendants' Motion for Partial Summary Judgment (Dkt. 42) is DENIED.

**DONE and ORDERED.**

174–75). However, because defendants' counterclaims are barred on other grounds, plaintiff's laches defense need not be addressed.